FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC WAREHOUSING CO., K.S.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-01476 (RBW) |
| | ) | |
| DEFENSE SUPPLY CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants, Defense Supply Center Philadelphia, et al., through counsel, respectfully move this Court to grant summary judgment on behalf of the Defendants.  In support of this motion, Defendants respectfully refer the Court to the attached statement of material facts not in genuine dispute; the attached memorandum of points and authorities; and the attached declarations of Raymond G. Miller of Defendant Defense Supply Center Philadelphia and Art Coulter and James Graham of the Department of Justice.

Dated: November 19, 2007          Respectfully submitted,


  /s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


  /s/_____
ANDREA McBARNETTE, D.C. Bar # 483789
Assistant United States Attorney Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC WAREHOUSING CO., K.S.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-01476 (RBW) |
| | ) | |
| DEFENSE SUPPLY CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to LCvR 7 (h), Defendants respectfully submit this statement of material facts as to which there is no genuine dispute.  In support of the motion for summary judgment, is the attached declarations of Raymond G. Miller of Defendant Defense Supply Center Philadelphia and Art Coulter and James Graham of the Department of Justice.

1.    By email dated February 12, 2007, Plaintiff, Public Warehousing Company ("PWC") submitted a FOIA request to DSCP for the Price Negotiation Memoranda ("PNM") of the following three DSCP contracts awarded to PWC: SPO300-03-D-3061; SPM300-05-D-3119 and SPM300-05-D-3128.  Compl. ¶ 7; Miller Decl. ¶¶ 4-6.

2.    No PNM was created for SPM300-05-D-3119.  This was an emergency acquisition and offers were solicited from one source only.  Miller Decl. ¶ 7.

3.    A PNM is a document containing analysis factors relevant to proposed contract pricing, including negotiation goals and potential contractor risk assessments (based on proprietary and confidential business information submitted by all potential offerors), used by the Contracting Officer and agency as a basis for price negotiations and acquisition strategy setting.  Miller Decl. ¶ 13.

4.      Art J. Coulter, a trial attorney in the Fraud Section of the Civil Division, Commercial

Litigation Branch of the Department of Justice ("DOJ") and James Graham, a trial

attorney in the Fraud Section of the Criminal Division of DOJ, are conducting criminal

and civil enforcement investigations against PWC.  The investigation concerns pricing on

contracts between DSCP and PWC.  As part of both investigations, DOJ requested and

was given the documents at issue in Plaintiff's FOIA request.  Coulter and Graham have

requested that these documents not be released pursuant to a FOIA request until their

investigations are concluded.  Coulter Decl. ¶¶ 2, 4, 6; Graham Decl. ¶¶ 2, 4, 6.

5.      DSCP denied Plaintiff's FOIA request pursuant to 5 U.S.C. §552(b)(7)(A).  Miller Decl.

¶ 19.

6.      The Plaintiff appealed this denial to the headquarters of DSCP, the Defense Logistics

Agency ("DLA") located at Fort Belvoir, Virginia.  DLA upheld the determination not to

release the PNMs.  It held that DSCP had properly invoked exemption (b)(7)(A) and

further determined that exemption (b)(4) applied to the requested information.  Compl. ¶

10; Miller Decl. ¶¶ 22-23.

7.      Upon further review DLA further determined that exemption (b)(5), which incorporates

the deliberative process privilege applied to the requested information.  Miller Decl. ¶¶

25-28.

Dated: November 19, 2007          Respectfully submitted,


   /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


   /s/
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC WAREHOUSING CO., K.S.C., )
 )
   Plaintiff, )
  v. )
 ) Civil Action No. 07-01476 (RBW)
 )
DEFENSE SUPPLY CENTER, et al., )
 )
   Defendants. )
         )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

   Pursuant to Rule 56(b), of the Federal Rules of Civil Procedure, Defendants Defense

Supply Center Philadelphia ("DSCP"), Defense Logistics Agency ("DLA") and the Department

of Defense ("DOD"), hereby submit this memorandum in support of their motion for summary

judgment.  In support of the motion for summary judgment, is the attached declarations of

Raymond G. Miller of DSCP; and Art Coulter and James Graham of the Department of Justice

("DOJ").

## BACKGROUND

   This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  The

Plaintiff, Public Warehousing Company ("PWC"), seeks Price Negotiation memoranda ("PNM")

of certain contracts awarded to PWC.  The PNMs contain information about each offeror's

proposal, both successful and unsuccessful, and the agency's evaluation of these proposals.

Miller Decl. ¶¶ 8-9, 13, 17-18.

*Each offerer's proposal*

The PNMs contain information regarding each offerer such as:  the prices offered; the business proposal; the technical proposal; the location and capacity of storage facilities; the methods of inventory control; the quality control and assurance programs; the security measures; the suppliers as well as the method used to select each supplier; the management practices; and the employees.  Miller Decl. ¶ 17.

*Agency's evaluation of these proposals*

The requested PNMs detail the government's assessment of each proposal about the following: the prices offered; the strength of the technical offer; the strength of the business offer; the government's pricing strategy for negotiations; the analysis of the delivery and distribution prices; the comparison of the aggregate price; the government's determination of what further information was needed to assess the favorability or increase the favorability of the proposal; the government's assessment of the strengths and weaknesses; the government's confidence in the various control systems; the ability of the offeror to satisfy the customers' needs; the ability of the offeror to substantially increase production if a surge is needed; the government's assessment to meet the socioeconomic requirements of government contracts; the government's assessment of the proposals for mentoring businesses as required by government regulations; the overall ranking of each offeror's proposal; and the negotiation objective of each offeror.  Miller Decl. ¶ 18.

**Criminal and Civil DOJ investigations**

Art J. Coulter, a trial attorney in the Fraud Section of the Civil Division, Commercial Litigation Branch of the Department of Justice ("DOJ") and James Graham, a trial attorney in

the Fraud Section of the Criminal Division of DOJ, are conducting criminal and civil

enforcement investigations against PWC.  The investigation concerns pricing on contracts

between DSCP and PWC.  As part of both investigations, DOJ requested and was given the

documents at issue in Plaintiff's FOIA request.  Coulter and Graham have requested that these

documents not be released pursuant to a FOIA request until their investigations are concluded.

Coulter Decl. ¶¶ 2, 4, 6; Graham Decl. ¶¶ 2, 4, 6.

## STANDARD OF REVIEW

Summary judgment may be granted if the pleadings and evidence "show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  In Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the

Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded

not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

whole, which are designed 'to secure the just, speedy and inexpensive determination of every

action.'"  Summary judgment is the procedural vehicle by which nearly all FOIA cases are

resolved.  See Cooper Cameron Corp. v. Dept. of Labor, 238 F.3d 539, 543 (5th Cir. 2002).

Summary judgment is available to a defendant in a FOIA case if the agency proves that it

has fully discharged its obligations under the FOIA, after the underlying facts and the inferences

to be drawn from them are construed in the light most favorable to the FOIA requester.  Miller v.

Department of State, 779 F.2d 1378, 1382 (8th Cir. 1985), citing Weisberg v. Department of

Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983).  To discharge its FOIA obligations, the agency

must demonstrate that "each document that falls within the class requested either has been

produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."

Goland v. CIA, 607 F.2d 339, 352  (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980), quoting

National Cable Television Ass'n. Inc. v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).  The agency

may sustain its burden by submitting detailed affidavits that identify the documents at issue and

explain why they fall under the claimed exemptions.  See Summers v. Dept. of Justice, 140 F.3d

1077, 1080 (D.C. Cir. 1998); Miller, 779 F.2d at1382.

Agencies establish that all of their obligations under the FOIA have been met through

declarations.  Thus, when the pleadings, supplemented by affidavits or declarations, show no

genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law,

summary judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121 (D.C. Cir.

1982).

## ARGUMENT

### I.    Search was adequate

In responding to a FOIA request, an agency is under a duty to conduct a reasonable

search for responsive records.  Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990);

Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  An agency is not

required to search every record system, but need only search those systems in which it believes

responsive records are likely to be located.  Oglesby, 920 F.2d at 68.  Simply stated, the

adequacy of  the search is "dependent upon the circumstances of the case."  Truitt v. Dept. of

State, 897 F.2d 540, 542 (D.C. Cir. 1990).

The Defendant has done an adequate search because it has found the requested materials

that were created.  The Plaintiff requested the PNMs of the three (3) DSCP contracts awarded to

PWC: SPO300-03-D-3061; SPM300-05-D-3119 and SPM300-05-D-3128.  Compl. ¶ 7; Miller

Decl. ¶¶ 5.  No PNM was created for SPM300-05-D-3119.  This was an emergency acquisition and offers were solicited from one source only.  Miller Decl. ¶ 7.  Because the Defendant has found the existing requested materials, the search was adequate.

## II.    Requested documents should be withheld under Exemption 3

Under Exemption 3, the FOIA allows an agency to withhold documents "specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § (b)(3) (2003).  Defendants invoke Exemption 3 to withhold the proposals of unsuccessful offerors submitted in response to a competitive solicitation because such proposals are exempt from disclosure pursuant to the National Defense Authorization Act of 1997.

The National Defense Authorization Act specifically prohibits the disclosure of "a proposal in the possession or control of an agency" to any person under the FOIA.  41 U.S.C. § 253b (m)(1) (2003).  The Act defines the term "proposal" as "any proposal, including a technical, management, or cost proposal, submitted by a contractor in response to the requirements of a solicitation for a competitive proposal."  Id. at § 253b(m)(3).

Here, the PNMs contain proposals for unsuccessful offerors and those proposals are protected under the National Defense Authorization Act.  See Miller Decl. ¶ 26;  See Hornbostel v. Department of the Interior, 305 F. Supp. 2d 21, 30 (D.D.C. 2003) (upholding the exemption of proposals from disclosure pursuant to the National Defense Authorization Act).  Therefore, the Defendant properly withheld the PNMs under Exemption 3 and the National Defense

Authorization Act.

## III.    Defendants properly applied Exemption 4

Exemption 4 of the FOIA permits an agency to withhold "trade secrets and commercial or financial information [that was] obtained from a person [and is] privileged or confidential." 5 U.S.C. § 552(b)(4).  The information in the requested PNMs was submitted by various company offerors, so it was, in fact, obtained from a person.  E.g., Airline Pilots Ass'n, Int' v. United States Postal Service, No. 03-2384, 2004 WL 5050900 (D.D.C. 2001) (holding "person" includes corporations).

### a)    *Commercial and Financial*

The terms "commercial" and "financial" in FOIA's Exemption 4 are given their ordinary meanings.  Public Citizen Health Research Group v. FDA, 704 F.2d 12980, 1290 (D.C. Cir. 1983).  The requested PNMs are documents containing business information submitted by all potential offerors including their:  prices offered; business proposals; technical proposals; location and capacity of storage facilities; methods of inventory control; quality control and assurance programs; security measures; suppliers as well as the method used to select each supplier; management practices of each offeror; and employees of each offeror.  Miller Decl. ¶17.  These records are commercial because the submitters have a "commercial interest" in them. Pub. Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (holding that the term commercial is not confined to records that reveal basic commercial operations and that records are commercial so long as the submitter has a "commercial interest" in them). Therefore, the Defendant correctly deemed the information within the PNMs as commercial.

b)    *Privileged or Confidential*

To determine whether the redacted information is privileged or confidential within the meaning of Exemption 4, the Courts use either of two tests depending on whether the information was provided to the government voluntarily or if it was required to be provided.   If it was voluntarily provided, the information is deemed confidential under the less stringent test of <u>Critical Mass Energy Project v. Nuclear Regulatory Comm'n</u>, 975 F.2d 871, 879 (D.C. Cir. 1992)  (*en banc* ); and if the information was involuntarily provided, it is deemed confidential under the more stringent test of <u>National Parks & Conservation Ass'n. v. Morton</u> ("National Parks "), 498 F.2d 765, 770 (D.C. Cir. 1974).  <u>See</u> <u>Nat'l Air Traffic Controllers Ass'n v. FAA</u>, No. 06-53, 2007 WL 495798, at *2 (D.D.C. Feb. 12, 2007) (referring to the National Parks test as the "more stringent standard" for documents).  If it was voluntarily provided, the information is confidential if it is "of a kind that would customarily not be released to the public by the person from whom it was obtained."  <u>Critical Mass Energy Project</u>, 975 F.2d at 879.  If, however, the information was given involuntarily, it will not be considered confidential unless the submitter can show that disclosure will: (1) "impair the government's ability to obtain necessary information in the future"; or (2) "cause substantial harm to the competitive position of the person from whom the information was obtained."  <u>National Parks</u>, 498 F.2d at 770. However, "the two interests identified in the National Parks test are not exclusive"and "impairment of the effectiveness of a government program is a proper factor for consideration in conducting an analysis" under Exemption 4.  <u>Pub. Citizen Health Research Group v. NIH</u>, 209 F. Supp.2d 37, 52 (D.D.C. 2002) ("the exemption also protects a governmental interest in administrative efficiency and effectiveness"); <u>Judicial Watch, Inc.</u>, 108 F. Supp.2d 19, 29

(D.D.C. 2000) ("impairment of an agency's ability to carry out its statutory purpose is sufficient cause to justify a finding of confidentiality within the context of Exemption 4").

A)    *National Parks* Test

The Government solicitations leading to the award of contracts SPO300-03-D-3061 and SPM300-05-D-3128, explicitly required offerors to provide certain proprietary and confidential business information to the government for evaluation during negotiation.   Miller Decl. ¶ 8. Under the more stringent National Parks test, the submitted information is privileged and confidential.

i)    Impairment

The government's ability to receive the type of information detailed in the PNMs  in the future would likely be impaired if the requested PNMs were disclosed.  "[A]s vendors would hesitate to provide full disclosure of their confidential information for fear of revealing all their business secrets to their competitors," disclosure of the submitted information could affect the reliability or quality of such data.  Miller Decl. ¶ 8.  "Disclosure would limit the amount of detail received by the Government, thus skewing competitor comparisons and especially making competitors whose information was disclosed hesitant to be as forthcoming in the future."  Id.; see Judicial Watch, Inc, 108 F. Supp.2d at 29 (protecting export insurance applications that contained detailed financial information and customer lists, because "disclosure of such information might encourage exporters to be less forthcoming in their submissions").

Moreover, disclosure of the requested information would severely impair DLA's future ability to acquire and deliver the best quality goods and services at the best price for the

Warfighter because vendors would not be as forthcoming to disclose their confidential business information. Miller Decl. ¶ 8. <u>Pub. Citizen Health Research Group v. NIH</u>, 209 F. Supp.2d at 52 (upholding withholding in part because "if the royalty information were disclosed, the effectiveness of [agency's] licensing program would be impaired"). Therefore, the requested PNMs are properly withheld under Exemption 4 because the government would be impaired in not only obtaining the type of information in the PNMs, but in acquiring and delivering quality goods and services at the best price.

ii)    Substantial harm to the competitive position

A party need not demonstrate actual competitive harm in order to show that releasing the information would likely cause substantial competitive harm. <u>Gulf and Western Indus. V. United States</u>, 615 F.2d 527, 530 (D.C. Cir. 1979). Rather, a party need only demonstrate the existence of actual competition and the likelihood of substantial competitive injury. <u>Id</u>. Further, while the parties cannot rest on a "conclusory and generalized allegation of substantial competitive harm," the court need not engage in a sophisticated economic analysis to determine whether there is a likelihood of substantial competitive injury. <u>Public Citizen Health Research Group v. FDA</u>, 704 F.2d 12980, 1291 (D.C. Cir. 1983). In this case, there is evidence that the submitters face actual competition by the mere fact that the solicitations generated responses from different companies all seeking to be awarded the same contract. There were 4 offerors for SPO300-03-D-3061 and five for SPM300-05. Miller Decl. ¶¶ 30-31.

Release of the requested information would likely cause competitive harm for a number of reasons. For example, the prices offered under these two solicitations are composed of two factors: the distribution fee and the delivered fee. The delivered price is the cost of the item.

The distribution fee is the price the offeror charges to transport the item from the supplier to the customer. Disclosure of either of these prices or their aggregate would allow competitors to determine just how low their price should be on the next solicitation. Miller Decl. ¶ 10.

In addition, the offerors also provided information regarding their suppliers in their business proposal. Disclosure of the offeror's suppliers would allow, among harms, other competitors to use these same suppliers or attempt to tie the supplier to an exclusive contract. The offeror may have incurred substantial cost in finding these suppliers. The offeror may have provided financing or other monetary aid for these suppliers. Disclosure of the suppliers would allow competitors the opportunity to use them without incurring costs the offeror may have incurred. Miller Decl. ¶ 11.

Further, sources of supply are routinely withheld from the public to avoid just these competitive harms. Disclosure of the location and capacity of storage facilities, inventory control quality control, security measures and management practices would allow competitors to adopt these same measures. These measures may have used the financial resources of the offeror to develop. Disclosure of these measures gives competitors an unfair advantage. Therefore, the Defendant properly withheld the requested information under Exemption 4. Miller Decl. ¶ 12.

Courts also consider the objections of submitters to disclosure of their information in determining whether Exemption 4 is appropriate. See Pub. Citizen Health Reserach Group v. NIH, 209 F. Supp.2d 37, 50 (D.D.C. 2002) (finding when the agency sent notices to nearly five hundred submitters and that the "evidence of those who did respond was overwhelmingly against disclosure, which tips the scales heavily toward a conclusion that release of the information would likely cause substantial competitive injury"); see also Durnan v. U.S. Dep't of Commerce,

777 F. Supp. 965, 967 (D.D.C. 1991).

Here, there were objections to a release of their information by submitters.  Pursuant to Executive Order 12600, when the offerors were given an opportunity to state their position on the release of the information, one offeror replied as follows: "Our competitive Proposals contain in-depth and descriptive accounts of [our] solution, planning, and performance of key functions for the overall operations necessary to carry out the requirements listed out in the Solicitations.  As the current Contract has a fixed term and will likely be recompeted in the future, making information from [our] competitive Proposals public would seriously jeopardize [our] competitiveness in future public procurements and other similar undertakings."  Miller Decl. ¶ 32.  A second offeror responded:  "Yes, the disclosure of the information in question could cause a substantial harm to our competitive position.  Sine the number of competitors and opportunities are limited, as well as we were not awarded the business for the solicitations in question, then we feel by disclosing our know-how "technical proposal" and prices, our competitors will be able to predict our proposal and prices in any forthcoming solicitations."  Miller Decl. ¶ 33.  In light of the Defendant's analysis as well as the objections of the submitters, the Court should uphold Defendant's withholding under Exemption 4.

        b)         *Critical Mass* Test

Here, offerors submitted information that the government did not require under the solicitations for the contracts. "During the course of negotiation, offerors voluntarily provided additional clarifying information in response to questions from DLA regarding perceived weaknesses in the bidder's proposals.  See Miller Decl. ¶ 9.  In Mallinckrodt v. West, 140 F. Supp. 2d 1, 6 (D.D.C. 2000) the Court rejected the argument that "all of the information

submitted in an effort to win a government contract should be viewed as having been required by the contract solicitation." Instead, the court distinguished those items that the solicitation stated "should" be included verse "must" be included and held that items that the solicitation stated "should" be included would be evaluated under the <u>Critical Mass.</u> test. <u>Id.</u>

The offerors voluntarily provided information such as past performance issues; sanitation and pest management reports; discount levels; and reevaluation of socio-economic goals. The level of detail provided by the offerors in their submissions is not the type of information they would typically share with members of the public. <u>See</u> Miller Decl. ¶ 9. Therefore, the voluntarily submitted information is properly withheld under Exemption 4.

## IV.    The Defendant properly applied Exemption 5

Exemption 5 allows an agency to withhold memoranda or letters that would be protected from discovery in routine civil litigation. <u>See</u> 5 U.S.C. § 552(b)(5). Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. This provision has been interpreted to incorporate the deliberative process privilege, which shields from disclosure documents that reflect or reveal the deliberations an agency engaged in prior to arriving at a particular decision. <u>See</u> <u>Tax Analysts v. Internal Revenue Serv.</u>, 294 F.3d 71, 76 (D.C. Cir. 2002). Whether the deliberative process privilege applies is "dependent upon the individual document and the role it plays in the administrative process." <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 867 (D.C. Cir. 1980). The critical question in this context is whether "disclosure of [the] materials would expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its

functions..." Dudman Communications Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1568

(D.C. Cir. 1987).  To receive protection, therefore, the materials must be both predecisional and

deliberative.  See Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993).

Here, the PNMs are predecisional and deliberative documents which assisted the

Defendant in analyzing the proposals seeking contracts with the government.  "A PNM is a

document containing analysis factors relevant to proposed contract pricing, including negotiation

goals and potential contractor risk assessments (based on proprietary and confidential business

information submitted by all potential offerors), used by the Contracting Officer and agency as a

basis for price negotiations and acquisition strategy setting."  Miller Decl. ¶ 10; see Mead Data

Central v. U.S. Department of the Air Force, 566 F.2d 242 (D.C. Cir. 1977) (the Air Force's

internal self-evaluation of its contract negotiations, including discussion of the merits of past

efforts, alternatives currently available, and recommendations as to future strategy, fall clearly

within [the deliberative process privilege]"); Browntein Zeidman and Schomer v. Department of

Air Force, 781 F. Supp. 31, 33-34 (D.D.C. 1991) (finding report containing "bases and reasons"

for Air Force's decision to select bidder's proposal contained the kind of predecisional evaluation

protected by deliberative process privilege encompassed in FOIA exemption 5).  Therefore, the

Defendant properly withheld the PNMs from disclosure under Exemption 5.

**V.      The Defendant properly applied Exemption 7(A)**

Exemption 7(A) authorizes agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552 (b)(7)(A).   In defending an Exemption 7(A) withholding, the agency must show that (1) a law enforcement proceeding is pending, or reasonably regarded as prospective, see Manna v. United States Dep't of Justice, 51 F.3d 1158, 1164 (3rd Cir. 1995), or as preventative, see, e.g., Moorefield. v. United States Secret Serv., 611 F.2d 1021, 1026 (5th Cir. 1980), and (2) that the release of the information could reasonably be expected to cause some articulable harm. See Manna, 51 F.3d at 1164.  An articulable harm occurs "whenever the government's case in court would be harmed by the premature release of evidence or information," Nat'l Labor Relations Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 232 (1978), or when disclosure would impede any necessary investigation prior to the enforcement proceeding. Dickerson v. U.S. Dep't of Justice, 992 F.2d 1426, 1429 (6th Cir. 1993).

Once the first threshold requirement is satisfied, the agency must establish that the release would result in an articulable harm.  To satisfy this burden, the agency must provide at least a general description of the types of documents at issue sufficient to indicate the type of interference threatening the law enforcement proceeding.  Maydak v. DOJ, 218 F.3d 760 (D.C. Cir. 2000) (agency's grouping the requested records into categories and offering generic reasons for withholding the documents in each can satisfy its burden of proof under Exemption 7(A)); see also Bevis v Dep't of State, 801 F.2d 1386, 1389 (D.C. Cir 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 789 F.2d 64 (D.C. Cir.1986).

14

**1)    The responsive documents were compiled for law enforcement purposes**

The responsive documents are deemed to have been compiled for law enforcement

purposes because the Department of Justice, both the Civil Division and the Criminal Division,

have requested the PNMs for their parallel investigations of alleged contract fraud involving

contracts awarded to the Public Warehousing Company (PWC).  Coulter Decl. ¶¶ 1, 3. Graham

Decl. ¶ 1.  Information not initially obtained or generated for law enforcement purposes may still

qualify under Exemption 7 if it is subsequently compiled for a valid law enforcement purpose at

any time prior to "when the Government invokes the Exemption."  John Doe Agency v. John

Doe Corp., 493 U.S. 146, 153-156 (1989); see also Kansi v. U.S. Dep't of Justice, 11 F. Supp. 2d

42, 44 (D.D.C. 1998) (explaining that once documents become assembled for law enforcement

purposes, "all [such] documents qualify for protection under Exemption 7 regardless of their

original source"); Kay v. F.C.C., 867 F. Supp. 11, 18 (D.D.C. 1994) (records pertaining to

pending FCC investigation of licensee found to be compiled for law enforcement purposes where

FCC investigation was in process at time that FCC first invoked exemption, even though

compilation of documents was not effected by that time).  Accordingly, the PNMs at issue have

been compiled for law enforcement purposes, specifically for the ongoing investigations into the

business activities of the Plaintiff.

**2)    The release of the responsive documents would result in an articulable harm**

Defendant has provided a general description of the PNMs at issue sufficient to indicate

the type of interference threatening the law enforcement proceeding.  See Bevis, 801 F.2d 1386;

Coulter Decl. ¶ 4; Graham Decl. ¶ 4.  The declarations moreover, functionally describe the

withheld information sufficiently for the Court "to trace a rational link between the nature of the

document and the alleged likely interference." Id. at 1389.   DOJ's declarations described the requested PNMs as internal government documents reflecting the government thinking in awarding the contract, including evaluation of risk factors with descriptions of contractor strengths and weaknesses, and contractor statements to the government influencing the award and reflecting their intentions with regard to contract performance.  Coulter Decl. ¶ 4. Graham Decl. ¶ 4.

Release of the PNM before the conclusion of the investigations would interfere with the investigations in several very specific and concrete ways.  First, the document reflects the government's internal discussions regarding the contractor and the contract terms which , if disclosed prematurely, would invite company officials otherwise not privy to this internal government thinking to shape their testimony  to what is in the PNM.  Second, the PNMs, if released before the conclusion of the investigation, would identify DLA contract officials who authored the document and invite contact by the company which continues to deal with the company in this ongoing contract.  Third, premature release during the pendency of an investigation, would invite the company to manufacture evidence and formulate its defenses before the government has the opportunity to find out the facts in this matter.  Coulter Decl. ¶ 7; Graham Decl. ¶ 7.

Most importantly, the PNM, an internal government document, is being used to formulate the government theory of investigation and prosecution, much the way an internal memo between prosecutors and investigators is used to plan the case, and premature release can only damage the chance of success of the investigation if the target company gets access to this information at this stage of the matter.  It raises the risk targets and/or witnesses will alter evidence or shape their testimony as well as exposes government witnesses to attack before the

government completes the investigation.    Coulter Decl. ¶ 8, Graham Decl. ¶8.  Because the release of the responsive documents would result in an articulable harm, the Defendant has properly asserted exemption 7(A).

## VI.    Segregable information

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977).  Here, the Defendant has reviewed the requested materials under Exemption 3, 4 and 5 and determined that it was unable to segregate materials because materials exempt by these exemptions were so inextricably interwoven with information not covered that the excision of this information would render the document meaningless.  Miller Decl. ¶¶ 24, 27, 29.  Accordingly, the Defendants have complied with its obligation under the FOIA to release any reasonably segregable information.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Defendants respectfully request that the Court

grant summary judgment in favor of the Defendants.

Dated: November 19, 2007              Respectfully submitted,


  /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


  /s/
ANDREA McBARNETTE, D.C. Bar # 483789
Assistant United States Attorney Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

OF COUNSEL:
Sandra Guydon
Defense Logistics Agency

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC WAREHOUSING CO., K.S.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-01476 (RBW) |
| | ) | |
| DEFENSE SUPPLY CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER

UPON CONSIDERATION of Defendant's dispositive motion, the memorandum of points and authorities in support thereof, any opposition thereto, any reply, and the record herein, it is hereby ORDERED that the motion is GRANTED.

SO ORDERED, on this _____ day of _____, 200__.

_____
United States District Court Judge